IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TALMON HEGWOOD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 7344 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| CITY OF BERWYN, JOSEPH PETERSEN, K-MART DEPARTMENT STORE, ROBERT HARTZ, and PAOLA RAIMONDI, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Talmon Hegwood, Jr. ("Hegwood") filed suit against the City of Berwyn and two Berwyn police officers, Joseph Petersen ("Petersen") and Paola Raimondi ("Raimondi"), as well as K-Mart Department Store ("K-Mart")[1] and K-Mart manager Robert Hartz ("Hartz") (collectively "Defendants"), alleging various civil rights violations. In the First Amended Complaint Count I alleges that Petersen illegally searched and seized Hegwood, in violation of Section 1983; Count II alleges that Petersen and Hartz conspired to deprive him of his constitutional rights, in violation of Section 1983 and 1985; Count III alleges false imprisonment against Petersen; Count IV alleges state law intentional infliction of emotional distress against Raimondi; Count V alleges indemnification against the City of Berwyn; Count VI alleges respondeat superior against K-Mart; Count VII alleges state law false arrest against Petersen and Hartz; Count VIII alleges state law malicious prosecution against Petersen and Hartz; Count IX alleges state law intentional infliction of emotional distress

---

[1] In its Motion to Dismiss, Defendant K-Mart points out that Hegwood apparently named the wrong entity in his First Amended Complaint—K-Mart Department Store instead of K-Mart Corporation. K-Mart, however, did not advance any argument in this regard.

against Petersen and Hartz; and Count X alleges state law battery against Raimondi. K-Mart and Hartz (collectively "K-Mart Defendants") move to dismiss Counts II, VI, VII, VIII, and IX. For the following reasons, the K-Mart Defendants' Motion to Dismiss is granted.

## BACKGROUND

On October 19, 2008, Hegwood alleges that he called the Berwyn Police Department to report a child abduction. (First Am. Compl. ¶ 9.) Upon arrival at the scene, police questioned Hegwood and another person, who said Hegwood approached him in the bathroom and made him feel uncomfortable so he asked Hegwood to leave. (R. 89, Hegwood's Amended Resp. to Mot. to Dismiss 90.) The responding officers did not allow Hegwood to leave the restaurant while they conducted a warrant check by radio, and the check revealed that there was an outstanding warrant to arrest Hegwood. (*Id.* at 88, 90.) The officers therefore took Hegwood into custody. (First Am. Compl. ¶ 10.)

At the police station the officers conducted an inventory of Hegwood's possessions, which consisted of a rolling duffel bag and contents within the bag. (R. 89, Hegwood's Amended Resp. to Mot. to Dismiss 90.) The duffel bag had a K-Mart price tag on it. (*Id.* at 90.) Inside the bag were a variety of K-Mart items, including hats, shirts, and jackets; these items still had prices tags and theft detection devices attached and some were still on hangars. (*Id.*) Hartz, a K-Mart manager, identified these items as stolen merchandise based on a surveillance video of Hegwood while he was in the store. (*Id.* at 65, 78, 90-93.) A grand jury indicted Hegwood for possession of stolen property and theft on November 13, 2008. (*Id.* at 89.) The State dismissed the theft charge *nollo prosequi* because Hegwood was already found guilty of violating his conditional discharge and a finding of

2

guilty for the theft charge would have been served concurrently and would not have increased his overall time in prison. (*Id.* at 33.)

Hegwood claims that Officer Petersen, who responded to Hegwood's call, arrested him without probable cause upon arriving at the scene. (First Am. Compl. ¶ 10.) Hegwood further contends that Officer Petersen falsely filled out police reports regarding his arrest for theft and violating probation. (First Am. Compl. ¶ 14.) He also claims that in the course of preparing for the related criminal prosecution Hartz conspired with Petersen to "provide false and misleading information" to the state prosecutors. (First Am. Compl. ¶ 13.)

## STANDARD OF REVIEW

The K-Mart Defendants seek dismissal of Hegwood's claims under Rule 12(b)(6) for failing to state a claim upon which relief can be granted. To state a proper claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.*

**DISCUSSION**

**I.     Count II Against Hartz: Conspiracy Under 42 U.S.C. §§ 1983 and 1985**

Hegwood claims that Petersen and Hartz conspired to deprive him of his constitutional rights, in violation of 42 U.S.C. §§ 1983 and 1985. To successfully plead conspiracy, the plaintiff must "indicate the parties, general purpose, and approximate date [of the conspiracy] so that the defendant has notice what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002).

Count II specifically alleges that Petersen and Hartz "reached an agreement amongst themselves to unlawfully search and seize Plaintiff, and to thereby deprive Plaintiff of his Constitutional rights." (First Am. Compl. ¶ 19.) The Court interprets this allegation to refer to an alleged agreement between Petersen and Hartz to seize, arrest and search Hegwood on October 19, 2008. Hegwood fails to allege the reason for this alleged agreement, when it was entered into, the specific role of each conspirator or even the end goal of the agreement. *See Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 859-60 (7th Cir. 1999) (no conspiracy because "form and scope of conspiracy" were "entirely unknown" based on allegations); *Walker*, 288 F.3d at 1007-08. Without these facts alleged, Hegwood fails to allege a conspiracy. These are insufficient allegations to allow Hartz to "prepare his defense" or for the court to "determine whether the claim [is] within the ballpark of possibly valid conspiracy claims." *Walker*, 288 F.3d at 1008. The alleged conspiracy based on the arrest therefore fails to state a claim.

Although Hegwood adds a location for his allegation of conspiracy against the Cook County State's Attorney, specifically that it occurred at the courthouse in October and November 2009, this allegation suffers from the same defect as the previous allegation. Hegwood's conclusory allegation again fails to provide the purpose of this alleged agreement, the false information provided, and the

4

role of each conspirator. These facts are similarly insufficient to put Hartz properly on notice and narrow the focus of discovery for the parties. Hegwood's alleged conspiracy claims are therefore dismissed.

## II. Count VI Against K-Mart: Respondeat Superior

Hegwood's First Amended Complaint asserts that K-Mart is liable under the theory of respondeat superior because Hartz "committed the acts alleged above [conspiracy and false arrest] in the scope of their [sic] employment as employees of the City of Berwyn." (First Am. Compl. ¶ 20.) As an initial matter, this allegation refers to the City of Berwyn as Hartz's employer, not the correct employer, K-Mart. For this simple reason Count VI does not state a claim against K-Mart and therefore is dismissed.

Even assuming Hegwood properly referred to K-Mart as Hartz's employer, Hegwood still does not state a respondeat superior claim. As a private corporation K-Mart "is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) (quoting *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). A private corporation, however, can be liable if its policy or practice is the "moving force" behind the constitutional violation. *Dossey*, 515 F.3d at 782. In addition, just like municipalities, "liability [against private corporations] can be 'demonstrated indirectly 'by showing a series of bad acts and inviting the court to infer from them that the policy-making level'" of the corporation was "'bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned ... the misconduct of subordinate officers.'" *Dossey*, 515 F.3d at 782 (quoting *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)). Here, Hegwood claims that Hartz's role in the conspiracy can be imputed to K-Mart. No facts in the First

5

Amended Complaint, however, support such a claim. The conspiracy allegations against Hartz and Petersen do not even remotely suggest K-Mart was involved. The Court thus dismisses Hegwood's respondeat superior claim relating to the conspiracy count.

Nor is there a factual basis in the First Amended Complaint to hold K-Mart liable under respondeat superior for the state law claims against Hartz (Count VII: false arrest; Count VIII: malicious prosecution; and Count IX: intentional infliction of emotional distress). An employer is liable for the torts of an employee if they are committed "within the scope of employment." *See, e.g., Pesek v. Marzullo*, 566 F. Supp. 2d 834, 843 (N.D. Ill. 2008) (Bucklo, J.). "To be within the scope of employment, an employee's acts must be: (a) the kind for which the employee is empowered to perform; (b) substantially within the authorized time and space limits; and (c) actuated, at least in part, by a purpose to serve the master." *See, e.g., Arias v. Allegretti*, No. 05 C 5940, 2008 WL 191185, at *5 (N.D. Ill. Jan. 22, 2008) (Gettleman, J.). Besides asserting the conclusory statement that Hartz was acting in the scope of his employment, which is clearly deficient under the pleading rules, no facts show Hartz was authorized to act the way he allegedly did, or that he acted with the goal of benefitting K-Mart. Accordingly, the facts in the First Amended Complaint also fail to establish a claim against K-Mart under respondeat superior for the state law claims.

**III.    Count VII Against Hartz: False Arrest**

A private defendant may be liable for false arrest if the defendant "participates" in making an arrest that is eventually found to be unlawful. *Odorizzi v. A.O. Smith Corp.*, 452 F.2d 229, 231-32 (7th Cir. 1971) (no false arrest if defendant does not "procure" the arrest, "command" that police make the arrest, or "campaign" to have defendant arrested). In other words, this is a factual determination, where the defendant can be liable for "directing" the illegal arrest but not for merely

6

"giving information." *See, e.g., Doe v. City of Chicago*, 39 F. Supp. 2d 1106, 1113-14 (N.D. Ill. 1999) (Williams, J.) (no false arrest claim because defendant described events that occurred leading to arrest and did not "request" that arrest be made**).** Here, the First Amended Complaint contains only one allegation regarding Hegwood's actual arrest: "Defendant Petersen, who responded to Plaintiff's call for help, arrested Plaintiff without probable cause or any other legal justification." (First Am. Compl. ¶ 10.) No facts suggest that Hartz had any involvement in Hegwood's arrest. It was Petersen that responded to Hegwood's call and eventually arrested him. Hartz did not "direct," "command," or "order" the arrest. In fact, even though merely providing police with information leading to an arrest is not a basis for false arrest liability, Hartz did not even do that. Factual allegations suggesting Hartz had any role in Hegwood's arrest are entirely lacking. Accordingly, the Court dismisses Count VII.

**IV.     Count VIII Against Hartz: Malicious Prosecution**

Under Illinois law, a plaintiff must establish five elements for a malicious prosecution claim: "(1) the commencement or continuance of an original or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such a proceeding; (4) the presence of malice; and (5) damages." *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) (quoting *Swick v. Liautaud*, 411 N.E.2d 229, 231 (Ill. 1980)). While the First Amended Complaint satisfies the second element because the charges were dismissed *nollo prosequi*, the other elements lack the requisite factual detail to state a claim. As to the first element—defendant commencing or continuing a criminal proceeding—the defendant "must have initiated the criminal proceeding or 'his participation in it must have been of so active and positive a character as to amount to advice and cooperation.'" *Logan*, 246 F.3d at 922 (quoting *Denton v.*

*Allstate Ins. Co.*, 504 N.E.2d 756, 760 (Ill. App. Ct. 1987)). Typically, the defendant "commences" a criminal judicial proceeding by filing a complaint. *See, e.g., Schwartz v. Coulter*, No. 91 C 7954, 1993 WL 398578, at *8 (N.D. Ill. Oct. 6, 1993) (Williams, J.).

Here, as in *Logan*, the First Amended Complaint does not allege that Hartz filed a criminal complaint against Hegwood, provided false information at the time of arrest, or "pressured" the Berwyn officers to arrest Hegwood. The allegations pertaining to Hegwood's arrest include only the facts that Hegwood called the police reporting suspicious activity at McDonalds and Officer Petersen responded to the call and arrested Hegwood "without probable cause." (First Am. Compl. ¶¶ 9, 10.) Any allegations against Hartz relate to his involvement, about a year after the arrest, in providing false information to prosecutors. (First Am. Compl. ¶ 13.) The first element is therefore lacking because no facts link Hartz to the commencement of the case against Hegwood. The same factual deficiencies also apply to elements three and four, which provide no notice to Hartz about the nature and scope of this claim. The Court has no basis to find that Hegwood's allegations amount to a valid claim. Because of these deficiencies, Count VIII fails to state a claim of malicious prosecution against Hartz.

**V.     Count IX Against Hartz:  Intentional Infliction of Emotional Distress**

Under Illinois law, a claim of intentional infliction of emotional distress requires that the plaintiff show that "(1) defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 864; *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992). The "extreme and outrageous" element covers conduct that is "so extreme as to go beyond all possible

8

bounds of decency, and to be regarded as intolerable in a civilized community." *Kolegas*, 607 N.E.2d at 211.

The conclusory allegations in Hegwood's First Amended Complaint do not involve the type of conduct that has qualified as extreme and outrageous. *See, e.g., Fox v. Hayes*, 600 F.3d 819, 842-43 (7th Cir. 2010) (during interrogation of father of victim that was found sexually assaulted and killed, it was extreme and outrageous for officers to yell to the victim's mother, who was also present during the interrogation, that her husband committed the crime, was a liar, and never loved her or her daughter); *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605-06 (7th Cir. 2006) (employer's conduct was extreme and outrageous for forcing the plaintiff, while she was pregnant, to climb up an unstable stairway to hook up her computer as well as denying her access to her computer and altering files by "sabotaging" her computer). Hegwood's allegations simply restate the elements for an intentional infliction of emotional distress claim without providing any other factual support. There is no plausible basis to find that Hartz's actions were improper at all; his conduct does not even "come close" to being the kind of behavior that is "extreme and outrageous." *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 626 (7th Cir. 2010). Accordingly, Count IX is dismissed.

**CONCLUSION AND ORDER**

The Court grants Hartz and K-Mart's Motion to Dismiss. Counts II, VI, VII, VIII, and IX are dismissed.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: **December 16, 2010**