Oh that isIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TALMON HEGWOOD, JR.,

Plaintiff,

v.

CITY OF BERWYN, JOSEPH PETERSEN, K-MART DEPARTMENT STORE, ROBERT HARTZ, and PAOLA RAIMONDI,

Defendants.

Case No. 09 C 7344

Judge Virginia M. Kendall

## MEMORANDUM OPINION AND ORDER

Plaintiff Talmon Hegwood ("Hegwood"), proceeding *pro se*, brought suit against Defendants for constitutional and state law violations stemming from his October 19, 2008 arrest. The Court granted K-Mart Department Store and Robert Hartz's Motion to Dismiss. Now the remaining defendants—the City of Berwyn and Officers Joseph Petersen and Paola Raimondi (collectively "Defendants")—move for summary judgment. For the following reasons, the Court grants their Motion for Summary Judgment on Counts I, II, and III and dismisses without prejudice Hegwood's supplemental state law claims in Counts IV, V, VII, VIII, IX, and X.

## STATEMENT OF UNDISPUTED FACTS[1]

### I. Local Rule 56.1

Defendants, as the moving party, must present facts supported by affidavits and evidence in the record showing there are no genuine issues of material fact and they are entitled to judgment as

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to Defendants' 56.1 Statements have been abbreviated to "Defs. 56.1"; and Hegwood's Response to Defendants' Statements of Material Fact have been abbreviated to "Hegwood 56.1 Resp. ¶ __."

a matter of law. L.R. 56.1(a). Each fact must cite to a specific piece of evidence. *Id.* To create a fact dispute, Hegwood, as the party opposing summary judgment, must respond to Defendants' facts by pointing out contrary facts that are supported by affidavits or admissible evidence in the record. *Id.* 56.1(b)(3)(B). Noting that a particular fact is "disputed," without supplying the required evidentiary support, is insufficient; the Court deems admitted facts that suffer such a deficiency. *Id.* 56.1(b)(3)(C) ("All material facts set forth in the statement required by the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."). Not only must Hegwood support his responses to Defendants' Rule 56.1 facts with specific citations, but the evidence he offers must also be admissible. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

Hegwood never responded to Defendants' facts 22 through 51 and his failure to "controvert" these facts as Local Rule 56.1 requires means they are all deemed admitted. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules.").

Although as a *pro se* litigant the Court affords Hegwood leniency if he fails to comply with procedural technicalities, his *pro se* status does not give him a license to ignore the requirements of L.R. 56.1.[2] *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Greer v. Bd. of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2003); *Members v. Paige*, 140 F.3d 699, 702 (7th Cir.

---

[2] Although Hegwood is now *pro se*, the Court previously appointed him an attorney, who withdrew due to an irreconcilable conflict about how to proceed with the litigation. Hegwood filed a second motion seeking appointment of counsel but his demeanor and conduct in the litigation made it clear that he was competent to litigate this straightforward case *pro se*. Plus, Hegwood has extensive experience litigating his own civil cases (about eight cases, including habeas and civil rights cases) in this district; he has also represented himself in federal and state criminal matters. (Hegwood 56.1 Resp. ¶ 10; Hegwood Dep. 6:12-11:13.) Moreover, Hegwood has worked for multiple law firms in the past. Due to his experience and the simple nature of this case, the Court denied his Second Motion to Appoint Counsel. (R. 106.)

1998. At the February 1, 2011 status the Court noted Hegwood's vast experience litigating cases in federal court and carefully explained his obligation under the local rules to present exhibits and evidence to support his claims. Hegwood's 56.1 response contains few citations to admissible evidence, and he attached voluminous exhibits to his response rarely explaining in his brief the significance of these documents. *See U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"). The Court has sifted through this lengthy material and considered those additional proposed facts that Hegwood discussed in his response brief and are admissible.[3] *See, e.g., Nitz v. Doe*, No. 08 C 334, 2010 WL 4876648, at *1-3 (N.D. Ill. Nov. 22, 2010) (Hibbler, J.) (*pro se* litigants are entitled flexibility in complying with L.R. 56.1, but they cannot submit sizeable filings and leave the Court with no guidance on the location and importance of material evidence).

## II. October 19, 2008 Incident[4]

Three events that occurred on October 19, 2008 comprise Hegwood's claims: (1) his arrest; (2) the search of his duffel bag; and (3) feeding him a burrito at the jail that made him become ill.

### A. Arrest

On October 19, 2008, Hegwood called the police to report a disturbance at a McDonald's in Berwyn, Illinois. (Hegwood 56.1 Resp. ¶ 13.) Joseph Petersen ("Petersen"), a police officer with

---

[3] As discussed, certain factual statements made in Defendants' 56.1 statements in support of the Motion for Summary Judgment are deemed admitted because Hegwood never responded. The Court is referring here to any additional facts that Hegwood wishes to introduce.

[4] Defendants have supported their proposed facts concerning the October 19 incident in compliance with L.R. 56.1. Hegwood verified under oath the accuracy of the factual allegations in his original Complaint, which was filed in the Circuit Court of Cook County. (R. 1 Ex. 1 at 1.) He confirmed at his deposition that these facts were accurate and the basis for his claim. (Hegwood Dep. at 67:17-21.) He also neither objected to these facts nor offered his own admissible evidence controverting these facts. Such evidence is therefore appropriate under L.R. 56.1.

the Berwyn Police Department, responded to the call. (*Id.* ¶¶ 3, 13.) Upon arriving at McDonald's, Petersen asked Hegwood for his identification. (*Id.* ¶ 15.) Hegwood provided his identification and Petersen conducted a warrant check over the radio.[5] (*Id.* ¶ 17.) Petersen received notification that there was an outstanding warrant for Hegwood from the Cook County Sheriff's Office. (*Id.* ¶ 18.) Petersen then handcuffed Hegwood and stated "you're under arrest because you have a warrant from the Cook County Sheriff's Office." (*Id.* ¶ 22.) Hegwood responded that he had recently been released from Cook County jail and that everything had "been cleared up." (*Id.* ¶ 23.) Petersen told Hegwood to "shut up" and led him to a marked Berwyn Police Department vehicle.[6] (*Id.* ¶ 24.)

**B. Search**

After the arrest, Hegwood asked Petersen to go back into McDonald's and pick up some personal items that he left on a table. (*Id.* ¶ 25.) Petersen retrieved Hegwood's duffel bag and portfolio, placed them in his police car, and transported them back to the Berwyn police station. (*Id.* ¶ 26.) After Hegwood arrived at the police station, Petersen noticed the duffel bag had a K-Mart price tag on it. (*Id.* ¶ 27.) Petersen performed an inventory of the bag and found clothing and hats inside; these items were still on hangers and had theft detection devices still attached. (*Id.*) There were no receipts for these items in the bag or on Hegwood. (*Id.* ¶ 35.)

Petersen then contacted the K-Mart Department Store in Forest Park and spoke with the manager, Robert Hartz ("Hartz"). (*Id.* ¶ 30.) Hartz told Petersen that $459.83 worth of inventory

---

[5] Hegwood disputes this fact by alleging that the identity of the officer who performed the warrant check was unknown. He does not offer, however, any supporting materials questioning Petersen's involvement as the officer who requested the warrant check. As such, the Court deems this fact admitted. *See* L.R. 56.1(b)(3)(B).

[6] As an aside, the Court notes that according to Defendants' representation at the January 7, 2010 initial status, upon arriving at the scene, a McDonald's customer indicated to Petersen that Hegwood was bothering him in the restroom and made him feel uncomfortable.

had gone missing from the store on October 19. (*Id.* ¶ 31.) Hartz also notified Petersen that the store had a surveillance video from October 19. (*Id.* ¶ 33.) The video showed Hegwood entering the store, taking an empty duffel bag, and filling it with items. (*Id.*) It also captured Hegwood leaving the store wearing a brown jumpsuit, which he was not wearing when he entered the store. (*Id.*) Finally, the video showed that Hegwood never paid for these items and was able to walk past a security guard, who was busy bringing in shopping carts. (*Id.* ¶¶ 33, 34.)

### C. Burrito Causing Illness

When Hegwood was brought into the Berwyn police station on October 19, Officer Paola Raimondi was the booking officer. (*Id.* ¶ 37.) She gave Hegwood a burrito that caused him to become ill. (*Id.* ¶¶ 38, 39.)

## III. Violation of Conditional Discharge

A grand jury convened on November 13, 2008, and Petersen testified about the October 19 incident. (*Id.* ¶ 42.) Based on his testimony, an indictment was obtained against Hegwood for theft of items over $300 but less than $10,000. (*Id.* ¶ 43.)

Because Hegwood had been conditionally discharged in a separate theft case shortly before the October 19 incident, there was a hearing on April 15, 2009 in the Circuit Court of Cook County regarding Hegwood's violation of conditional discharge. (*Id.* ¶ 44.) Petersen testified again at this hearing. (*Id.* ¶ 45.) As discussed, he testified that he responded to a disturbance at a McDonald's in Berwyn, arrested Hegwood after discovering the outstanding warrant, and performed an inventory search of the duffel bag at the police station. (*Id.*) He also contacted Hartz, the K-Mart manager, who explained that a surveillance video showed Hegwood stealing the items and sneaking past the security guard. (*Id.*) As a result of Petersen's testimony a state circuit court judge found that

Hegwood violated his conditional discharge and sentenced him to nine years incarceration. (*Id.* ¶ 48.) Hegwood is currently serving that sentence. (*Id.*)

Also on April 15, 2009 was a hearing for the underlying charge of theft from the October 19 incident. At the hearing the Cook County Assistant State's Attorney offered Hegwood a plea bargain of two years incarceration, which would run concurrent to the nine-year sentence for violating conditional discharge.[7] (*Id.* ¶ 50.) Hegwood rejected the plea deal. (*Id.*) At the hearing, the Assistant State's Attorney stated that the government could prove Hegwood guilty of theft beyond a reasonable doubt. (*Id.* ¶ 51.) But because a guilty verdict would only impose a sentence that would run concurrent to his sentence for violating conditional discharge, and the October 19 theft conviction would not add any additional time beyond the preexisting nine-year sentence, the government decided to *nolle prosequi* the theft charges from the October 19 incident. (*Id.*)

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is

[7] Defendants attached a transcript of the April 15 hearing as an exhibit to their L.R. 56.1 statements. *See* Defs. 56.1 Ex. 8. At the hearing the prosecutor stated: "It is the State's position that we can prove the defendant guilty beyond a reasonable doubt in this case. And if found guilty, he would be serving a concurrent sentence regardless of that. It wouldn't be more than he was already sentenced to, Judge. *Based on that, at this point we are going to motion State nolle pros all counts on this case, and this matter is now over*." (Defs. 56.1 Ex. 8 at 5.) (emphasis added).

properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## **DISCUSSION**

The following allegations remain against Petersen: § 1983 Fourth Amendment violation for illegal search and seizure (Count I); §§ 1983 and 1985 Conspiracy to Deprive Constitutional Rights (Count II); § 1983 violation for false imprisonment (Count III); and state law false arrest (Count VII), malicious prosecution (Count VIII), and intentional infliction of emotional distress (Count IX). Hegwood also claims that Raimondi is liable for intentional infliction of emotional distress (Count IV) and battery (Count X). Finally, Hegwood alleges indemnification against the City of Berwyn (Count V). The Defendants move for summary judgment on all of these claims.[8]

[8] Hegwood argues in his response brief that he is entitled to relief for illegal arrest and deliberate indifference from an incident in February 2008. This claim contained one paragraph in his original Complaint but was omitted entirely from the First Amended Complaint. An amended pleading supersedes, and in fact renders void, the earlier pleading. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004); *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) (superseded earlier pleading cannot "cure defects in the amended pleading, unless the relevant portion is specifically incorporated in the new pleading"). Here, Hegwood cannot pursue the February 2008 claims, which were discarded and not assimilated into the First Amended Complaint.

## I. Illegal Search and Seizure in Violation of Fourth Amendment (Count I)

Hegwood alleges in the First Amended Complaint that Petersen violated the Fourth Amendment by illegally searching and seizing him on October 19. He provides little else, in the way of legal argument or admissible facts, to support this claim.

For example, with respect to illegal search, Hegwood's First Amended Complaint contains no specific details about the location, timing, or nature of the alleged unconstitutional search. His response brief only mentions an unconstitutional search but explains little else. There is also no admissible evidence to support his claim. In other words, all that stands to support the unconstitutional search claim is the conclusory allegation in the First Amended Complaint that Defendants violated his rights. If Hegwood intended initially to pursue such a claim, it appears he no longer intends to do so. Because Hegwood provides no evidence to support this claim, and only casually references the search a couple times in his response brief, the Court grants summary judgment in favor of the Defendants. *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (granting summary judgment because plaintiff could offer no evidence that would convince a fact finder to accept her version of the events); *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 705 (7th Cir. 2010) (undeveloped arguments without support in the record are waived); *see, e.g., Froiseth v. County of La Crosse, Wis.*, No. 05-C-470, 2006 WL 1236714, at *6 (W.D. Wis. May 1, 2006) (plaintiff waived claim by not even mentioning it in his summary judgment response brief).

Even looking at the merits of his illegal search claim, however, the search of the duffel bag was reasonable. Defendants contend that the warrantless search was valid because it was done incident to a lawful arrest. But because the search was at the police station some time after the arrest

at McDonald's, the Court will examine it as an inventory search instead. An inventory search is a well-established exception to the Fourth Amendment's warrant exception. *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983). The rationale behind the exception is that the search of personal possessions at the police station following a lawful arrest is an administrative step performed in booking and jailing the suspect and as such probable cause is irrelevant. *Id.* "At the stationhouse, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed." *Id.* at 646. Such a search ensures that the suspect's personal possessions are accurately accounted for and properly stored during the period of incarceration and also prevents suspects from bringing dangerous instrumentalities or contraband into prison. *Id.* As a result, after arrest it is reasonable under the Fourth Amendment to search any bags of a suspect after he or she is brought to the police station. *Id.* at 648; *U.S. v. Edwards*, 415 U.S. 800, 803 (1974) (approvingly noting that courts of appeals have held that "both the person and the property in his immediate possession may be searched at the station house after the arrest has occurred at another place and if the evidence of crime is discovered, it may be seized and admitted in evidence").

Here, after being arrested Hegwood asked Petersen to go back into McDonald's and retrieve his bag from the table.[9] After Hegwood was at the police station, Petersen took inventory of the bag and discovered the K-Mart merchandise inside, which still had theft detection devices and price tags attached. (Hegwood 56.1 Resp. ¶¶ 27, 28.) This led him to contact Hartz, who explained that the video surveillance showed Hegwood stealing the merchandise. (*Id.* ¶¶ 30-33.) The evidence before

---

[9] Hegwood has not disputed that he owned the duffel bag.

the Court establishes that Petersen reasonably searched Hegwood's duffel bag as part of a valid inventory search.

Turning now to the alleged unlawful seizure, Hegwood only mentions briefly in a footnote of his response brief that he was illegally seized when the Berwyn police officers stopped him at McDonald's. (R. 112, Resp. Br. at 9 n.10.) The undisputed facts support the following sequence of events: Hegwood made the 911 call, and upon arrival at McDonald's Petersen approached Hegwood and asked him for identification, which he voluntarily provided. (Hegwood 56.1 Resp. ¶¶ 13, 15, 17.) After checking over the radio, Petersen learned there was an outstanding warrant for Hegwood, so he arrested him. (*Id.* ¶ 18.) Hegwood argues that the initial questioning and having to wait while Petersen did the warrant check over the radio constituted an improper seizure.

A threshold determination for such a claim is whether Hegwood was "seized" in a way that triggers the protection of the Fourth Amendment. *See Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). The universal test is that an individual is seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980). In general, when officers request to speak with someone or ask for identification, in the absence of other factors suggestion coercion, there is no seizure. *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (plurality opinion) ("[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions."); *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984) (noting that "police questioning, by itself, is unlikely to result in a Fourth Amendment violation" and "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure"); *U.S. v. Rodriguez*, 69 F.3d 136, 141 (7th Cir. 1996) (request for voluntary production of driver's license is

not a seizure but rather a "non-coercive police-citizen encounter"). In this case, it was Hegwood's 911 call that prompted the police response in the first place.[10] Petersen did not violate the Fourth Amendment by approaching Hegwood and asking for identification, and Hegwood voluntarily handed over his identification. This kind of interaction is not coercive and does not constitute a seizure. *See Pliska v. City of Stevens Point, Wis.*, 823 F.2d 1168, 1175-76 (7th Cir. 1987). Hegwood was not required to answer Petersen's questions or comply with his request for identification; he did so freely on his own. As a result, Petersen's actions in McDonald's did not implicate a Fourth Amendment interest.

Finally, Count I alleges that the Berwyn police department had the policy or practice to violate Hegwood's constitutional rights under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Hegwood provides no admissible evidence showing that an unconstitutional policy was in place. Moreover, "a *Monell* claim requires a municipal policy or practice that results in a constitutional deprivation," and the evidence before the Court establishes that there was no such violation. *Palka v. Shelton*, 623 F.3d 447, 455 (7th Cir. 2010); *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504-05 (7th Cir. 2010) ("But a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee.").

The Court grants Defendants' Motion for Summary Judgment on Count I.

## II. Conspiracy Under 42 U.S.C. §§ 1983 and 1985 (Count II)

Hegwood alleges that Petersen and Hartz conspired to provide false information about the October 19 incident to the police, with the intent to deprive Hegwood of his constitutional rights.

---

[10] In Hegwood's original Complaint, he stated that when the police arrived he stated "I'm the one who telephoned you." (R. 1 Ex. 1 at 2.)

(First Am. Compl. ¶ 13.) Specifically, Hegwood accuses Petersen of providing false testimony and inaccurate police reports to the States Attorney's Office. But this allegation, like many of Hegwood's other claims, remains unsupported by evidence gathered during discovery. Hegwood can no longer lean on the allegations of his First Amended Complaint to defeat summary judgment; he must affirmatively set forth evidence supporting his claim. *See Koszola*, 385 F.3d at 1111.

To establish a *prima facie* case of civil conspiracy under § 1983, Hegwood must allege that Petersen had an express or implied agreement with Hartz to deprive him of his constitutional rights, and must further allege an actual deprivation of his rights arising from overt acts in furtherance of the agreement. *See Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). Although a § 1983 conspiracy claim "certainly may be established by circumstantial evidence . . . such evidence cannot be speculative." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003). Thus, to defeat Defendants' Motion for Summary Judgment, Hegwood must demonstrate the existence of an agreement or acts "sufficient to raise the inference of mutual understanding" between Petersen and Hartz. *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 817 (7th Cir. 2000).

Even taken in a light favorable to Hegwood, the undisputed facts establish that there was no mutual understanding between Petersen and Hartz to arrest, search, and imprison him. After Petersen had arrested Hegwood and placed him in custody, Petersen found stolen items in his duffel bag and called Hartz to inquire about recent shoplifting activities. (Hegwood 56.1 Resp. ¶¶ 30-33.) This was their first and only interaction, and it occurred after the alleged constitutional violations. Petersen and Hartz did not know each other, nor had they even heard of Hegwood before the October 19 incident. Any civil conspiracy claim stemming from the October 19 incident is without merit.

To the extent that the First Amended Complaint alleges that Hartz and Petersen agreed to falsify testimony and police reports about the incident, this claim fails for three separate reasons. First, the same defect that has emerged for other claims resurfaces here: Hegwood relies on the allegations in his pleading, without providing credible evidence, to support this claim for relief. He fails to articulate the alleged inaccuracies in Petersen's testimony and reports, or in the K-Mart video surveillance showing him stealing the merchandise. There is also no reliable evidence showing that there was any agreement between Hartz and Petersen to tamper with this information, which is necessary for a civil conspiracy claim. *See, e,g., Stephens v. City of Chicago*, No. 98 C 809, 2002 WL 31010852, at *21 (N.D. Ill. Sep. 6, 2002) (Mason, M.J.) (conspiracy claim inadequate at summary judgment stage where there was no evidence of concerted action to cause a constitutional deprivation). Likewise, Hegwood asserts no legal argument addressing the validity of his § 1983 conspiracy claim in his response brief. Undeveloped or forfeited arguments constitute waiver. *See, e.g., Cooney v. Casady*, 746 F. Supp. 2d 973, 977 (N.D. Ill. 2010) (Bucklo, J.) (invalid civil conspiracy claim without evidentiary support or legal argument constituted waiver of claim). Finally, a § 1983 conspiracy claim must involve the deprivation of civil rights, so where, as here, there are no underlying constitutional violations, the conspiracy claim is fatally flawed. *Aponte v. City of Chicago*, No. 08 C 6893, 2010 WL 2774095, at *7 (N.D. Ill. July 14, 2010) (Kendall, J.).

Count II also refers to 42 U.S.C. § 1985 as a basis for relief under the conspiracy theory, but a § 1985 conspiracy claim must show "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirator's actions." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002); *Roach v. City of Evansville*, 111 F.3d 544, 547 (7th Cir. 1997) (invalid § 1985(3) conspiracy claim because no indication of any "class-based discriminatory animus"). Hegwood's

First Amended Complaint does not allege discriminatory animus, nor does Hegwood identify any admissible evidence suggesting discrimination. The conspiracy claims therefore fails under § 1985 too.

**III. False Imprisonment Under Section 1983 (Count III)**

Under § 1983, probable cause for making the arrest is an "absolute bar" to a false imprisonment claim. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006); *Friedman v. Vill. of Skokie*, 763 F.2d 236, 239 (7th Cir. 1985) The Court will therefore address whether Petersen had probable cause to arrest Hegwood at McDonald's and detain him.

The Fourth Amendment requires that every search or seizure must be "reasonable," or supported by probable cause. *See* U.S. CONST. amend. IV; *U.S. v. Childs*, 277 F.3d 947, 950 (7th Cir. 2002); *U.S. v. Ortiz*, 422 U.S. 891, 896 (1975) ("To protect . . . privacy from official arbitrariness, the Court always has regarded probable cause as the minimum requirement for a lawful search."). Probable cause exists when the facts and circumstances reasonably support a belief that the individual has committed, is committing, or is about to commit an offense. *See Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 679 (7th Cir. 2007). Because courts assess probable cause from an objective standpoint, the Court looks at the conclusions that the arresting officer reasonably might have drawn from the information known to him or her, not the subjective motivations for acting. *See id.* A determination on whether there is probable cause in a civil rights case is usually not suitable at summary judgment unless the undisputed facts establish that the officers had probable cause to arrest as a matter of law. *See Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993).

"A facially valid warrant generally shields an officer relying in good faith on the warrant from liability" for § 1983 false arrest, false imprisonment, and malicious prosecution claims. *Brooks v. City of Aurora, Ill.*, --- F.3d ---, No. 10-3265, 2011 WL 2623507, at *4 n.5 (7th Cir. July 6, 2011) (quoting *Lawson v. Veruchi*, 637 F.3d 699, 704 (7th Cir. 2011)); *Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009) ("The existence of an outstanding warrant supports probable cause for an arrest."); *see Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir. 1992). This rule applies "even if the arrest warrant is later determined to have an inadequate factual foundation." *Juriss*, 957 F.2d at 350; *Baker v. McCollan*, 443 U.S. 137, 143-46 (1979) (no § 1983 claim against the sheriff for failing to investigate whether a warrant was based on mistaken identity when plaintiff was arrested under a facially valid warrant that was intended for his brother); *see, e.g., Lewis v. Pleasant*, No. 98 C 3058, 2000 WL 198458, at *5 (N.D. Ill. Feb. 14, 2000) (Nordberg, J.) (finding after arrest that there was an inadequate factual basis to convict the arrestee did not subvert the fact that he was initially arrested under a facially valid warrant).

There is a recognized exception, however, where "officers responsible for bringing about an unlawful arrest knew that the arrest warrant had issued without probable cause; this is particularly true of officers who knew that those who obtained the warrant had deceived the authorizing body." *Juriss*, 957 F.2d at 351. So if police officers either procured the warrant by fraud (i.e., submitted a false affidavit to the magistrate that issued the warrant) or executed an arrest warrant despite knowing it was fraudulently obtained, they cannot hide behind a facially valid arrest warrant to avoid § 1983 liability. *Id.*; *Malley v. Briggs*, 475 U.S. 335, 345 (1986); *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985). For example, if the officer executes a valid warrant and believes the police department's process of organizing and informing officers of outstanding warrants is reliable, there

is no Fourth Amendment violation. *Cf. McMurry v. Sheahan*, 927 F. Supp. 1082, 1091 (N.D. Ill. 1996) (Gettleman, J.) (arrest of plaintiff could be deemed unreasonable when officer was aware that the department's process for checking warrants was unreliable and an "utter failure").

Here, it is undisputed that Petersen arrested Hegwood pursuant to a facially valid warrant. On September 11, 2008, Judge Salone of the Circuit Court of Cook County issued a warrant for Hegwood's arrest for retail theft of merchandise over $150. (Defs. 56.1 Ex. 5.) Petersen learned about this outstanding warrant while at the McDonald's on October 19 and arrested Hegwood in good faith reliance on this information. Hegwood offers no legal argument or admissible evidence challenging the existence of the warrant or Petersen's reliance on it in making the arrest. Because the September 11 warrant is facially valid, Hegwood is left with one option to keep his false imprisonment claim alive. He must present admissible evidence showing that this case fits within the exception articulated in *Juriss*: Petersen knew that the September 11 warrant was not supported by probable cause when he made the October 19 arrest. *Juriss*, 957 F.2d at 350-51.

Hegwood does not quarrel with the fact that Petersen arrested him based on the outstanding September 11 warrant. Rather, he challenges the validity of the warrant itself. But, as discussed, when a police officer makes an arrest in good faith reliance on an outstanding warrant there is probable cause for the arrest and no § 1983 claim will stand; in such a situation, even a later finding that the warrant was factually deficient does not revive the plaintiff's constitutional claims. *Juriss*, 957 F.2d at 350; *Baker*, 443 U.S. at 143-46. Simply put, Petersen believed that the September 11 warrant was valid, and he had no reason at the time to believe otherwise. Hegwood has presented no evidence to challenge Petersen's good faith belief.

Regardless, the Court will briefly address the substance of Hegwood's two arguments disputing the validity of the September 11 warrant. First, it appears that he contends that a judge never signed the warrant. The record, however, includes a certified copy of the September 11 warrant with Judge Salone's signature. (Defs. 56.1 Ex. 5.) Second, Hegwood argues that an administrative oversight led to the September 11 warrant. Yet, Hegwood fails to support this conjecture with any evidence. Since Hegwood fails to present evidence showing that Petersen either knew the September 11 warrant was invalid before the arrest, or that he provided false information that Judge Salone relied upon in issuing the warrant, the facially valid warrant remains valid. No facts exist tying Petersen to obtain the warrant and Hegwood fails in his effort to suggest that Petersen knew on October 19 that the arrest warrant was faulty. *See, e.g., Lewis*, 2000 WL 198458, at *5 (false arrest claim, which is similar to a false imprisonment claim, was invalid where there was a facially valid warrant and plaintiff presents "no evidence whatsoever that [defendant officer] used false statements or withheld facts in order to procure the warrant"). As such, the Court finds that Petersen had probable cause to arrest Hegwood on October 19 and grants summary judgment as to Count III.[11]

[11] Defendants also contend that they are entitled to qualified immunity on the § 1983 claims in Counts I, II, and III. In light of the Court's determination that a reasonable trier of fact could not conclude that Petersen violated Hegwood's constitutional rights, the Court need not address the issue of qualified immunity. *See, e.g., Mucha v. Vill. of Oak Brook*, --- F.3d ---, No. 10-2000, 2011 WL 489617, at *4 (7th Cir. Feb. 14, 2011) (did not reach qualified immunity issue "because the existence of probable cause protects the defendants from liability, and the defendants therefore do not require the additional protection of qualified immunity").

**CONCLUSION AND ORDER**

For these reasons, the Court grants Defendants' Motion for Summary Judgment on Counts I, II, and III. The remaining claims— intentional infliction of emotional distress (Counts IV and IX), indemnification (Count V), false arrest (Count VII), malicious prosecution (Count VIII), and battery (Count X)—are all brought under state law. The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir.1999). Finding no justification for departing from that "usual practice" in this case, the Court dismisses the supplemental state law claims asserted in Counts IV, V, VII, VIII, IX, and X and declines to exercise its discretion to review them.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 2, 2011